FAUSTO A. MUSCENTE *vs.* THE R. S. BRINE TRANSPORTATION COMPANY.

BEATRICE MUSCENTE, *p. a. vs.* SAME.

JANUARY 14, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are actions of the case brought by Fausto A. Muscente and his minor daughter to recover the damages resulting to them respectively from personal injuries sustained by the daughter in a collision which occurred between a trolley car operated by the United Electric Railways Company and a heavy truck, consisting of a tractor and trailer, operated by the defendant. In each case the plaintiff alleges that the negligent operation of the truck was a proximate cause of the daughter's injuries. At the time of the collision she was a passenger on the car and no contributory negligence by her or her father is claimed.

The two cases were tried together before a justice of the superior court, sitting without a jury, and at the conclusion of the trial he made a decision, in each case, for the defend-

ant, on the ground that according to the evidence the collision was not caused by any negligence of the defendant's servant in the operation of the truck, but solely by the negligent operation of the trolley car by the man in charge of it. The cases are now before us on bills of exceptions duly filed and allowed, the principal exception in each case being to the final decision. Since the relation of the parties and the nature of the cases are such that the father cannot maintain his action unless the daughter can maintain hers, we shall confine our discussion to the case of the daughter, and the word plaintiff in such discussion will refer solely to her.

The collision occurred in the intersection of Point and Richmond streets in the city of Providence at about 2:15 o'clock, p. m., on September 4, 1934. The former street runs approximately east and west and the latter north and south. The weather and conditions for driving were good. A few moments before the collision occurred, the defendant's truck, moving at a speed from 10 to 12 miles per hour, was proceeding westward on Point street, which is 40 feet wide between curbs, with sidewalks 10 feet wide, and was approaching Richmond street, which is 22 feet wide between curbs, with sidewalks 9 feet wide. A building stood at the southeast corner of the intersection, coming up to the building line on each street.

The one-man trolley car was at the same time approaching Point street from the south, on a track which crossed that street and occupied the middle of Richmond street. It stopped by a white pole, which stood on the east side of Richmond street about 55 feet south of the southerly curb line of Point street. A witness, who was driving a truck northward on the east side of Richmond street and stopped a few feet back of the car, when it stopped by the white pole, testified that its rear door was then opposite to the pole. Some other witnesses testified that the front door was then opposite to the pole.

The plaintiff boarded the car and paid her fare, and the car started forward. She testified that after that the motorman gave her a transfer. He testified that he started the car after she had paid her fare and that he thought he gave her a transfer. The collision occurred before she had left the vestibule. Another witness testified that when the car was entering the intersection, the motorman was turned around as if he was making change.

The operator of the defendant's truck testified, in substance, that as it moved westward, its right side was 2 feet from the curb on the north side of Point street and that he was seated 6 feet from that side of the tractor; that when he was at a distance from the easterly curb line of Richmond street which he estimated at 30 to 40 feet, he saw the trolley car stopped, a short distance to the south, on Richmond street, to take on passengers; that he kept on going and looked the other way to see if there was anything coming from the north; that then, when he was close to the northeast corner of the intersection, perhaps 10 or 15 feet away, going perhaps a little more slowly than before, as he had just been shifting from third speed to fourth, he looked again toward the south and saw the trolley car approaching the southerly curb line of Point street and slowing down as if it was going to stop; that it stopped when he was 10 or 15 feet away from the nearer rail, that is, when he was about 1 to 6 feet east of the easterly curb line of Richmond street; that he kept on going straight ahead and when the front wheels of his tractor were over the track, he saw the car right beside him; and that it struck the battery box right behind his cab and threw the tractor around to the right, so that it was headed to the north and was partly in Richmond street to the north of the intersection, and the tractor and trailer blocked the east side of that street.

The motorman testified that when his car entered the intersection, moving at a speed of about 4 miles per hour, he

saw the truck more than 50 feet east of the intersection; that he thought he had time enough to pass through ahead of the truck; that he did not see it slowing down, but thought it was going to stop; that he put on "a little more speed"; and that near the middle of the intersection the speed of his car was between 8 and 10 miles per hour.

He also testified that he did not see the truck again until just before the collision; that he then put his car into reverse; and that it stopped after it had gone about 6 or 7 feet into that part of Richmond street which was to the north of the north curb line of Point street. He further testified, as did the operator of the truck, that the right front corner of the car came in contact with the tractor at the step, where the battery was kept.

The projecting metal at the bottom of that corner of the car was damaged, and the rear half of the second door, back of that corner, was considerably damaged and the glass broken. The battery box, about 10 feet back from the front bumper of the tractor, which was about 15 feet long, was knocked off; the chassis was twisted a little; and the rear tire at the left rear of the tractor was cut to some extent. There were scratches and dents just above the doors of the car, and the operator of the truck testified that these were made by a canvas rack on the front board of the trailer, and that the trailer was wider than the tractor by about 6 inches on each side.

There was testimony that corroborated the testimony of the operator of the truck in important particulars, and there was other testimony that in like manner corroborated the testimony of the motorman and contradicted some of the testimony of the operator of the truck. Some of the witnesses who gave the latter testimony contradicted the testimony of both the operator of the truck and the motorman as to the position of the truck when the collision occurred. Counsel for the plaintiff contend that the admitted physical facts of the case show that the testimony of the operator of

the truck is incredible; but we do not find their reasoning convincing.

After the evidence had all been introduced, the trial attorney for the plaintiff made his argument and there was discussion between him and the trial justice as to the salient features of the evidence. The trial justice stated that he believed the testimony of the operator of the truck and found that he had not been negligent in its operation and that the collision was attributable solely to negligence by the motorman of the car. In arriving at this final finding he stated the material facts upon which it was based and which he found from the evidence before him. By reason of the final finding he rendered a decision for the defendant.

On the evidence the determination of the question whether or not the operator of the truck was negligent depended mainly on the credibility and weight of the testimony of the respective witnesses as to facts supporting the two sides of that question; and the trial justice, who saw and heard those witnesses was in a very much better position than we are in to decide as to such credibility and weight.

Bearing this in mind in considering and weighing the evidence as set forth in the transcript, we are not convinced that his conclusions that the operator of the truck had told the truth and was not negligent were against the preponderance of the evidence. Nor do we find that he applied any wrong rule of law in arriving at the latter conclusion. We therefore find that there is no merit in the plaintiff's exception 1, to the ruling of the trial justice in giving a decision for the defendant for costs.

The plaintiff's exception 2 is stated to be "to the ruling of the trial justice denying 'in toto' the 'Requests for Rulings of Law' submitted by the plaintiff." Her exception 3 is stated to be "to the refusal of the trial justice to rule upon" these same requests. The trial justice did deny them *in toto,* as shown by the transcript. Therefore, the only question

for consideration as to these requests is raised by exception 2.

This follows, also, for a reason stated in language quoted in the brief of the present plaintiff from the opinion of *Rugg, J.,* in *Hetherington & Sons* v. *Firth Co.,* 95 N. E. 962, (Mass.): "A question of practice as to trials at law before a judge sitting without a jury lies at the threshold. The defendant seasonably presented requests for rulings. It is said in the exceptions that 'these requests though not expressly passed on by the court are to be treated as refused, the defendant having duly reserved its exceptions, it being understood, however, that the facts assumed or hypothetically stated in these requests are to be taken as true only in so far as sustained by the evidence herein contained and referred to.' We interpret this as meaning that the requests were refused. If the court ignored them the defendant's rights can be no higher than if the court refused them. . . . In one essential particular only does he stand differently as to requests for rulings from a judge presiding over a jury trial: He may refuse to grant a request for the avowed reason that it is immaterial or inapplicable in view of the facts found by him."

It appears from the transcript in the instant case that after the trial justice had refused the requests for rulings of law the plaintiff's attorney said: "Will you note my exception?" and the trial justice replied that he would not. In our judgment this reply of the trial justice was immaterial. In spite of it, the exception stood as taken, being shown by the transcript; and it was set forth in the plaintiff's bill of exceptions, as allowed by the trial justice. Indeed, we do not find that the defendant contends that the exception was not taken. It only contends that the rulings excepted to did not constitute prejudicial error.

It is provided by general laws 1923, chapter 337, sec. 6, as amended by public laws 1929, chapter 1327, that, in actions at law tried in the superior court without a jury, "the

court shall, upon request of any party, make special finding upon any issue of fact and special ruling upon any question of law arising in the cause." There is a similar provision for the submission to the jury, at the request of a party in a civil case tried before a jury, of an issue for a special verdict, general laws 1923, chapter 341, sec. 6. It has repeatedly been held by this court that under the latter provision it is error for the trial justice to refuse to submit an issue, if it really is a material issue in the case, one on which the finding may be decisive of the case and will assist the requesting party, upon a review of the testimony before the trial justice or this court, in presenting properly the question whether the verdict is supported by the evidence; and that no issue should be submitted unless it satisfies these requirements. *Currie* v. *Nathanson,* 57 R. I. 351 at 361, 190 A. 22 at 26, and cases cited therein.

In our judgment the right which a party in an action at law tried in the superior court without a jury has, under the statutory provision above quoted, to have the court make a special finding upon any issue of fact or a special ruling upon any question of law *"arising in the cause,"* is subject to similar requirements. The issue of fact must really be a material issue in the case, the finding on which may be a decisive element in the final decision and will assist the requesting party, if that decision is later brought before this court for review, in presenting properly the question whether the decision is supported by the evidence.

So, also, the question of law must be a material one, which arises upon the facts, found by the court or proved by a clear preponderance of the evidence, and a ruling upon which may be a decisive element in the final decision and will assist the requesting party, if that decision is later brought before this court for review, in presenting properly the question whether the decision is founded on error of law.

A refusal by the court, in such a case, to make a requested

special finding on any issue of fact or a requested special ruling on any question of law does not constitute prejudicial error, if the above-stated requirements are not satisfied or if the finding or ruling is substantially made in the language of the court in stating the decision of the case or if otherwise it appears that the requesting party has not been materially prejudiced by the court's refusal to find or rule as requested. For a party to submit a large number of requests, for such findings or rulings, few, if any, of which satisfy the above-stated requirements, is an abuse of the privilege given by the statutory provision above quoted.

After considering the seventeen requested rulings of law in this case, in the light of the facts found by the trial justice from the evidence, we find that none of them was a ruling on a material question of law arising upon the facts so found by the trial justice and stated by him, in arriving at his finding that the defendant's truck operator was not guilty of negligence. We therefore find no merit in the plaintiff's exception 2 or 3.

The plaintiff's exception 22 is stated to be to the finding by the trial justice in the negative on the plaintiff's sixth request for a finding of fact, as follows: "A fair preponderance of the evidence proves that the operator of defendant's truck could have stopped said defendant's truck in sufficient time to avoid the collision with the United Electric Railways Company's trolley car upon which plaintiff was riding." In our judgment there is no merit in this exception, as the requested finding would be on an immaterial matter. The vital question in this connection is whether the ordinary prudent operator of a truck, under the circumstances which the trial justice found to be the circumstances in this case, would have stopped his truck in sufficient time to avoid the collision. The trial justice answered this question in the negative by finding that the defendant's operator was not negligent, and we have already found that he did not err in so finding. Therefore, we find no merit in the exception.

The plaintiff's exception 23 is stated to be to the refusal of the trial justice to find as requested in the seventh of the requests for findings of fact, as follows: "A fair preponderance of the evidence proves that the trolley car entered the intersection of Point and Richmond streets sufficiently in advance of the defendant's truck." The requested instruction is too vague, as it does not appear what "sufficiently" refers to; and for that reason, and because we cannot say that a preponderance of the evidence was against a finding that the truck entered the intersection first, we find no merit in the exception.

The plaintiff's exception 27 is stated to be to the refusal of the trial justice to find as requested in the thirteenth of the requests for findings of fact, as follows: "Under the established physical facts, the testimony of the operator of defendant's truck cannot be believed." On the evidence we cannot say that the proven physical facts made the operator's testimony incredible. We therefore find no merit in the exception.

The plaintiff's exception 28 is stated to be to the refusal of the trial justice to find as requested in the fifteenth of the requests for findings of fact, as follows: "The operator of the defendant's truck failed to bring his truck to a stop before the collision with the United Electric Railways Company's trolley car." On the evidence in the case, this could only mean that the truck was moving at the moment of the collision, and we cannot see that it is of any importance whether the truck was moving or stationary at that moment. We therefore find no merit in the exception.

The plaintiff's exception 5 is to the ruling of the trial justice in refusing to permit her to introduce in evidence, as an exhibit, a photograph taken of the scene of the collision about a year afterwards, after certain changes had taken place. We cannot say that this ruling constituted prejudicial error, and we therefore find no merit in the exception.

None of the other exceptions stated in the plaintiff's bill of exceptions has been relied upon before us and we therefore conclude that they have all been abandoned.

In each of the two cases, all of the plaintiff's exceptions are overruled, and each case is remitted to the superior court for entry of judgment for the defendant for costs, in accordance with the decision.

*Leo M. Goldberg, Philip B. Goldberg,* for plaintiff.
*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.